UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

OSMAN MARTINEZ,

              Petitioner,

                                        **OPINION & ORDER**
-against-                                **CV-05-0597 (SJF)(MLO)**

DAVID UNGER, Superintendent,

              Respondent.
----------------------------------------X

FEUERSTEIN, J.

On April 9, 2002, petitioner Osman Martinez (petitioner) was convicted in the County Court of the State of New York, Nassau County (the trial court), of robbery in the second degree. He now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 claiming that the verdict was against the weight of the evidence, that the evidence was legally insufficient, that the admission of bolstering testimony deprived him of a fair trial, that there was prosecutorial misconduct during summation, and that the trial court erroneously denied the various motions he made pursuant to N.Y. C.P.L. 330.30. For the reasons set forth herein, the petition is denied and the proceeding is dismissed.

I.    BACKGROUND

    A.    Factual Background

        1.    Trial Testimony

The following facts were taken from the trial testimony:

On July 24, 2000, at approximately 12:59 a.m., three Hispanic males attacked Maurice

1

Yllescas (Yllescas) and his brother Guillermo Yllescas (Guillermo) as they were getting into their car in front of the Arco Iris Bar (the bar), located at 219 Fulton Avenue, Hempstead, New York, and robbed Yllescas of a gold chain, gold charms, and some currency. (Trial Transcript [T.], pp. 472-489, 647-648). Specifically, Yllescas testified that one of the perpetrators, later identified as Juan Carlos Bonilla (Bonilla), punched him and took his gold chain and charms, while another perpetrator, later identified as Nilsson Fuentes-Cruz (Cruz), closed the car door on his hand and took money from his pocket. (T. 482-488, 496). In addition, Yllescas and Guillermo testified that the third perpetrator, later identified as petitioner, forcibly prevented Guillermo from exiting the car to assist Yllescas. (T. 489, 648-650).

Yllescas and Guillermo left the scene of the incident to call the police, and returned to the bar with Police Officer Joseph Sortino (Sortino) shortly thereafter. (T. 498-499). Yllescas testified that upon arriving at the bar, he observed seven to eight Hispanic males in front of the bar, and identified petitioner and Cruz to Sortino as two of the perpetrators. (T. 503-504). Guillermo testified that he identified petitioner to Sortino within one minute of arriving at the bar. (T. 653-654). Bonilla remains at large. (T. 477).

On cross-examination, petitioner's counsel and Cruz's counsel (collectively, defense counsel) brought out certain inconsistencies between Yllesca's trial testimony, grand jury testimony, and written statement to the police. (T. 509-524, 567-570). On redirect, the prosecutor asked Yllescas the following question: "And how certain are you that [petitioner] was involved in the robbery?" (T. 630). Yllescas responded: "one hundred percent." (T. 630). Defense counsel did not object to that exchange.

Defense counsel also attacked Guillermo's credibility on cross-examination. On redirect,

2

the prosecutor asked Guillermo the following question: "How certain are you that [petitioner] was involved in the robbery on July 24th of 2000?" (T. 699). Guillermo responded as follows: "I'm sure. I'm certain, because he's the one that was annoying me at the car." (T. 699). Defense counsel did not object.

On direct examination, Sortino testified that when he arrived at the bar with Yllescas and Guillermo, he observed six to eight Hispanic males standing on the sidewalk in front of the bar, including petitioner and Cruz; that he arrested petitioner within twenty to thirty seconds after arriving at the bar; and that at the time of the arrest, Yllescas was standing "right next to" petitioner. (T. 289-291, 296-297). Sortino further testified that at the time of the arrest, petitioner was wearing a yellow shirt, and that at the precinct, petitioner stated that he was present at the scene of the robbery, but that he did not do anything. (T. 290, 299).

On cross-examination, Sortino testified that prior to the arrest, Yllescas told him, through a civilian translator, that one of the perpetrators was a Hispanic male wearing a yellow shirt. (T. 305, 320-322). Sortino further testified that as he pulled up to the bar, Yllescas "had a reaction," that he observed an individual wearing a yellow shirt, and that Yllescas and Guillermo kept pointing to petitioner and affirmatively nodding when he asked them if petitioner was one of the perpetrators. (T. 305, 311, 331-334). Sortino testified that he then arrested the petitioner, and shortly thereafter, Cruz. (T. 311).

On redirect, Sortino testified that there was a language barrier because Yllescas and Guillermo spoke only Spanish, and that Yllescas identified petitioner by pointing and nodding. (T. 347). The prosecutor then asked Sortino the following question: "Was it clear to you that [Yllescas] was identifying [petitioner] as being involved in the robbery?" Sortino responded

3

"yes." (T. 347-348). Sortino then testified that Guillermo identified the petitioner in the same manner, "constantly pointing and nodding his head yes." (T. 348). The following are questions that the prosecutor asked and the answers that Sortino gave relating to Guillermo's identification of petitioner:

> Q: "And how emphatic was Guillermo?
>
> A: "Very emphatic."
>
> Q: "And how clear was it to you that Guillermo Yllescas was indicating to you that [petitioner] was involved in this robbery?"
>
> A: "Very clear."

(T. 348-349).

At the close of the People's case, and again at the close of the evidence, defense counsel moved to dismiss the indictment for legal insufficiency. (T. 722-724, 728). The trial court denied the motions. (T. 727, 729).


2. Summations

On summation, defense counsel, *inter alia*, challenged Yllesca's and Sortino's credibility. (T. 752-754, 756-766, 780-787). Petitioner's counsel specifically stated as follows:

> "And on redirect examination * * * the questions are * * * how sure are you that [petitioner] was involved. Oh, very sure. An attempt to sweep everything under the rug.
>
> You know, he could have said very, very sure. He would [sic] have even said very, very, very sure. And you know what? It doesn't mean a damn thing, because at the end of the day you have to look at what is supporting that statement. You have to look and see whether that statement and that naked assertion of confidence is built on anything. And it isn't. If you analyze it it's gone, it doesn't exist except in his own mind."

4

In his summation, the prosecutor, *inter alia*, made the following remarks:

> You want to know how Maurice Yllescas is sure, 100 percent sure? That is how he's sure, 100 percent sure, that opportunity to view in front of the bar coupled with the indelible impression left on his brain by three guys robbing him a few short minutes later and that opportunity to identify the [petitioner and Cruz] close in time. (T. 800).

* * *

> Remember one more thing about the police response and their presence at that scene. Officer Sortino tells us that within moments of arrival there they got identification on [petitioner], twenty seconds later they have identification on Cruz. * * *. (T. 809).

* * *

> "This whole misidentification position is especially interesting for [Cruz's counsel], because in his opening he conceded that there was a robbery and that his client was involved, but only to the extent that his client was there to fight, that he didn't have the intent to steal. * * * Now he's asking you to find that his client was actually not there at all – and he even argues in the alternative during his summation, but he's asking you to find now that his client wasn't there at all. * * * That is like asking to say, members of the jury, it's night time, if, however, you find that it's day time, could you find that it's morning." (T. 810-811).

    B.    Procedural Background

On April 9, 2002, petitioner was convicted, after a jury trial, in the County Court of the State of New York, Nassau County (Calabrese, J.), of robbery in the second degree (N.Y. Penal Law § 160.10[1]) and was sentenced to a determinate term of imprisonment of eight years.

On or about October 11, 2001, Cruz moved in the trial court, pursuant to N.Y. C.P.L. § 330.30(1), to set aside the jury verdict on the basis of prosecutorial misconduct during summations. On or about October 18, 2001, Cruz also moved in the trial court, pursuant to N.Y. C.P.L. 330.30(3), to set aside the jury verdict on the ground of newly discovered evidence, to wit,

5

Tracy Johnson, a purported witness to the incident. On or about October 22, 2001, petitioner requested leave to join in Cruz's motions pursuant to N.Y. C.P.L. § 330.30. By order dated November 20, 2001, the trial court implicitly granted petitioner's application for leave to join in the 330.30 motions and denied the motions.

On November 29, 2001, petitioner and Cruz jointly moved in the trial court, pursuant to N.Y. C.P.L. 330.30(3), to set aside the jury verdict on the ground of newly discovered evidence, to wit, another purported witness to the incident, Perez Sanchez. On January 15, 2002, petitioner and Cruz again jointly moved in the state court pursuant to N.Y. C.P.L. 330.30(3), to set aside the jury verdict on the ground of newly discovered evidence, to wit, another purported witness to the incident, Carlos Carcamo Zelaya[1]. By order dated March 20, 2001 [sic], the state court denied the motions.

Petitioner appealed his conviction and the denial of the 330.30 motions to the Appellate Division, Second Department raising, *inter alia*, the following issues: (1) that the jury's verdict was against the weight of the evidence; (2) that the evidence was legally insufficient; (3) that the testimony of Sortino regarding the prior identifications was bolstering and prejudicial; (4) that the prosecutor's comments during summation deprived him of his right to a fair trial; and (5) that the trial court erroneously denied the 330.30 motions. On November 24, 2003, the Appellate Division affirmed the judgment of conviction finding, *inter alia*, (1) that the evidence was legally sufficient to establish petitioner's guilt beyond a reasonable doubt; (2) that the verdict was not against the weight of the evidence; (3) that petitioner's contention regarding the admission of

---

[1] All four motions pursuant to N.Y. C.P.L. 330.30 will collectively be referred to herein as the 330.30 motions.

bolstering testimony was unpreserved for appellate review and, in any event, was without merit; (4) that petitioner's contention regarding prosecutorial misconduct during summation was unpreserved and, in any event, was without merit or did not constitute reversible error in light of the overwhelming evidence of petitioner's guilt; and (5) that the state court providently exercised its discretion in summarily denying, without a hearing, the 330.30 motions. People v. Martinez, 1 A.D.3d 611, 767 N.Y.S.2d 465 (2d Dept. 2003).

Petitioner then sought leave to appeal the decision and order of the Appellate Division to the Court of Appeals on the grounds (1) that the evidence was legally insufficient; (2) that Sortino's testimony regarding the prior identifications constituted improper bolstering that was prejudicial to petitioner; and (3) that the prosecutor's comments during summation deprived petitioner of his right to a fair trial. On January 30, 2004, the Court of Appeals denied permission to appeal. People v. Martinez, 1 N.Y.3d 598, 776 N.Y.S.2d 230, 808 N.E.2d 366 (2004).

On February 2, 2005, petitioner *pro se* filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising the following issues: (1) that the verdict was against the weight of the evidence; (2) that the evidence was legally insufficient; (3) that the admission of testimony by Sortino regarding prior identifications bolstered the eyewitness testimony and deprived him of his Sixth Amendment right to a fair trial; (4) that there was prosecutorial misconduct during summations, insofar as the prosecutor told jurors to reject defense arguments because they were inconsistent, misrepresented evidence, and shifted the burden of proof; and (5)

7

that the state court erred in denying the 330.30 motions[2].

II.  DISCUSSION

   A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001) (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 [10th Cir. 1999]). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application"

---

[2] Cruz also filed a petition for a writ of habeas corpus in this Court, Fuentes-Cruz v. Berbary, CV-04-2480, which is assigned to the Honorable Arthur D. Spatt. Judge Spatt referred to petition to Magistrate Judge E. Thomas Boyle, who issued a report and recommendation dated September 9, 2005. Magistrate Judge Boyle recommended that Cruz's unexhausted claims be dismissed and the proceeding stayed on the exhausted claims to afford Cruz the opportunity to exhaust all available state court remedies.

8

clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. Under the "unreasonable application" standard, "a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001). Under the AEDPA, determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B. Exhaustion

Prior to bringing a habeas petition in federal court, a petitioner "must exhaust the remedies available in state court or demonstrate that 'there is an absence of available State corrective process or that circumstances exist that render such process ineffective to protect the rights of the [petitioner].'" Fama v. Commissioner of Correctional Services, 235 F.3d 804, 808 (2d Cir. 2000)(citation omitted). The exhaustion requirement requires the petitioner to have "fairly presented" to the highest state court "both the factual and legal premises of the claim he asserts in federal court." Jones v. Keane, 329 F.3d 290, 294-295 (2d Cir. 2003)(internal quotations and citation omitted).

There is no dispute that petitioner exhausted his claims (1) that the verdict was against the weight of the evidence; (2) that the evidence was legally insufficient; and (3) that the state court

9

erred in denying the 330.30 motions. Moreover, respondent does not contend that petitioner failed to exhaust his remedies with respect to the remaining claims, and it appears that all claims have been properly exhausted for habeas review.

C.  Procedural Bar

A federal court may not review a state prisoner's federal claims if the claims were denied in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 749-750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). In order for federal habeas review to be procedurally barred, the state court's reliance on state law must be "clear from the face of the opinion." Fama, 235 F.3d at 809 (internal quotations and citation omitted).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision). When a state court says that a claim is "not preserved for appellate review" and then rules "in any event" on the merits, such a claim is procedurally defaulted. See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005).

D.  Weight of the Evidence Claim

Petitioner's claim that the verdict was against the weight of the evidence does not present a federal constitutional issue. See Rodriguez v. O'Keefe, No. 96 Civ. 2094, 1996 WL 428164, at * 4 (S.D.N.Y. Jul. 31, 1996), aff'd, 122 F.3d 1057 (2d Cir. 1997); see also Ramos v. Phillips, No. 05 CV 0023, 2005 WL 1541046, at * 6 (E.D.N.Y. June 30, 2005)(holding that a "weight of the evidence" claim is not cognizable in a federal habeas court); Correa v. Duncan, 172 F.Supp.2d 378, 381 (E.D.N.Y. 2001)(holding that because a "weight of the evidence" claim is a pure state law claim, a federal court is precluded by 28 U.S.C. § 2254[a] from considering the claim). Accordingly, this Court is precluded from considering petitioner's "weight of the evidence" claim.

E.  Legal Sufficiency Claim

When considering the legal sufficiency of the evidence, the court "must look to state law to determine the elements of the crime," Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (citation omitted), and determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. Ponnapula, 297 F.3d at 179.

Under New York law, a person is guilty of robbery in the second degree when "he forcibly steals property and when * * * [h]e is aided by another person actually present." N.Y. Penal Law § 160.10(1). Viewed in the light most favorable to the prosecution, there was

sufficient evidence from which a rational juror could have found the petitioner guilty of robbery in the second degree under N.Y. Penal Law § 160.10(1). At trial two eyewitnesses testified that there were three perpetrators; that petitioner was one of the perpetrators; that two of the perpetrators forcibly stole a chain, charm and money from Yllescas; and that petitioner prevented Guillermo from exiting the vehicle to assist Yllescas. In addition, the arresting officer testified that petitioner fit the description given to him by the eyewitnesses of one of the perpetrators and that he admitted to being present at the scene of the incident. The jury was entitled to credit that testimony, and this Court must defer to the jury's credibility assessment. See, e.g. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996)(holding that a federal habeas court must defer to the jury's assessments of the weight of the evidence and the credibility of witnesses). Accordingly, the evidence was legally sufficient to convict petitioner of robbery in the second degree under New York law. Therefore, habeas relief is not warranted on petitioner's legal insufficiency claim.

F. Evidentiary Claim

At trial, petitioner failed to object to the admission of Sortino's testimony on redirect examination, which he now claims to be improper bolstering testimony that deprived him of a fair trial. The Appellate Division, Second Department found the claim unpreserved for appellate review. People v. Martinez, 1 A.D.3d 611, 767 N.Y.S.2d 465 (2d Dept. 2003)(holding that the petitioner's contention that he was denied a fair trial by the admission of bolstering testimony of Sortino on redirect examination is unpreserved for appellate review pursuant to N.Y. C.P.L. 470.05). Since the Appellate Division based its decision on an independent and adequate state procedural ground, and since petitioner has not asserted any cause for his procedural default or

any prejudice resulting therefrom, this claim is precluded from habeas review.

In any event, this claim is without merit. Federal habeas review is limited to determining whether a petitioner's custody violates federal law. See 28 U.S.C. § 2254(a). Federal habeas relief does not lie for mere errors of state law. Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Questions about the admissibility of evidence are cognizable on habeas review only if the petitioner can establish that the decision to admit the evidence rendered the trial so fundamentally unfair as to deny his or her right to due process of law. See Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998). "The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Id. (citing Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 [1990]). The standard is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been 'crucial, critical, highly significant.'" Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985) (quoting Nettles v. Wainwright, 677 F.2d 410, 414–15 [5th Cir. 1982]).

While New York law prohibits bolstering, "it is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process rights to a fair trial." Nieves v. Fischer, No. 03 Civ. 9803, 2004 WL 2997860, at * 7 (S.D.N.Y. Dec. 28, 2004)(citations omitted). Courts in this circuit have repeatedly held that "the concept of 'bolstering' really has no place as an issue in criminal jurisprudence based in the United States Constitution. It is at most a New York State rule or policy deriving from People v.

Trowbridge[3]." Id. (citing cases); see also Scott v. Walker, No. 01 CV 7717, 2003 WL 23100888, at * 8 (E.D.N.Y. Dec. 30, 2003)(holding that petitioner's challenge to certain bolstering testimony was not cognizable on habeas review); Smith v. Walsh, No. 00-CV-5672, 2003 WL 22670885, at * 6 (E.D.N.Y. Oct. 20, 2003)(holding that a bolstering claim is not a cognizable basis for federal habeas relief). Accordingly, petitioner's claim that the trial court improperly admitted the bolstering testimony of Sortino regarding the prior identifications raises a state law evidentiary issue and not a federal constitutional question. Therefore, habeas relief is not available on this claim.

Moreover, even if this claim were not procedurally barred and did raise a constitutional question, it is without merit. Sortino's testimony regarding the out-of-court identifications was admitted only on redirect examination after defense counsel opened the door to such testimony on cross-examination. In addition, assuming, *arguendo*, that the testimony was erroneously admitted, it was not sufficiently material or pervasive so as to have denied petitioner a fundamentally fair trial. Accordingly, habeas relief is not warranted on this claim.

G.     Prosecutorial Misconduct Claim

At trial, petitioner failed to object to the challenged remarks of the prosecutor during summation. The Appellate Division, Second Department found the prosecutorial misconduct claim unpreserved for appellate review pursuant to N.Y. C.P.L. 470.05(2). People v. Martinez, 1 A.D.3d 611, 612, 767 N.Y.S.2d 465 (2d Dept. 2003)(holding that the petitioner's challenge to various remarks made by the prosecutor on summation was unpreserved for appellate review).

---

[3] 305 N.Y. 471, 113 N.E.2d 841 (1953), superceded by N.Y. C.P.L. § 60.25.

Since the Appellate Division based its decision on an independent and adequate state procedural ground, and since petitioner has not asserted any cause for his procedural default or any prejudice resulting therefrom, petitioner's prosecutorial misconduct claim is precluded from habeas review.

In any event, petitioner's prosecutorial misconduct claim is without merit. Generally, a prosecutor's misconduct will require reversal of a state court conviction only where his or her remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 191, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); see also Donnelly v. DeChristoforo, 416 U.S. 637, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (holding that a prosecutor's misconduct requires reversal only where the remarks sufficiently infected the trial so as to make it fundamentally unfair, and, therefore, a denial of due process). To determine whether a prosecutor's remarks deprived the petitioner of a fair trial, the court must consider (1) the severity of the misconduct; (2) the measures adopted by the trial court to cure the misconduct; and (3) the certainty of a conviction absent the misconduct. See Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994).

Petitioner claims that the prosecutor engaged in misconduct during his summation because (1) he told jurors to reject defense arguments because they were inconsistent; (2) he misrepresented the evidence; and (3) he shifted the burden of proof. Petitioner presented these claims to the Appellate Division on his direct appeal. The Appellate Division held that "the challenged remarks were either fair comment on the evidence, permissive rhetorical comment, responsive to the defense counsel's summation * * *, or were not so prejudicial as to constitute reversible error in light of the overwhelming evidence of the [petitioner's] guilt." People v. Martinez, 1 A.D. 2d 611, 612, 767 N.Y.S.2d 465 (citations omitted). Petitioner has not

established that the state court ruling was contrary to, or involved an unreasonable application of, Supreme Court precedent. Moreover, consideration of the challenged comments in the context of the entire trial demonstrates that they are not sufficiently egregious as to warrant habeas relief.

To the extent that the Appellate Division concluded that any prosecutorial misconduct was harmless, "that finding is subject to the same standard of deference as is any other legal conclusion." Howard v. Walker, 406 F.3d 114, 123 (2d Cir. 2005). Thus, this Court must determine whether the state court's application of the harmless error standard set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), was objectively unreasonable. See Gutierrez v. McGinnis, 389 F.3d 300, 306 (2d Cir. 2004).

The Chapman standard for harmless error review is that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. 824. In light of the overwhelming evidence of the petitioner's guilt presented at the trial, I cannot conclude that the state court unreasonably applied the Chapman standard in making its harmless error determination. Accordingly, habeas relief is not warranted on petitioner's prosecutorial misconduct claim.

H.   Denial of 330.30 Motions Claim

Claims that a state court improperly denied a post-conviction motion for a new trial are not cognizable on federal habeas review. See U.S. ex rel. Kassim v. Wilkins, 298 F.2d 479, 480 (2d Cir. 1962); see also Savinon v. Mazucca, No. 04 Civ. 1589, 2005 WL 2548032, at * 37 (S.D.N.Y. Oct. 12, 2005)(holding that procedural errors in state post-conviction proceedings are not cognizable on federal habeas review); Guzman v. Couture, 99 Civ. 11316, 2003 WL 165746,

at * 13 (S.D.N.Y. Jan. 22, 2003)(accord); Ranta v. Bennett, No. 97 Civ. 2169, 2000 WL 1100082, at * 13 n. 2 (E.D.N.Y. May 23, 2000)(stating that the denial of a state law motion for a new trial based on newly discovered evidence does not provide a basis for habeas relief); Sparman v. Edwards, 26 F.Supp.2d 450, 468 n. 13 (E.D.N.Y. 1997)(stating that federal habeas courts do not have jurisdiction to review state court denials of motions for a new trial), aff'd, 154 F.3d 51 (2d Cir. 1998). Accordingly, habeas relief is not available on this claim.

III. CONCLUSION

Petitioner's petition for a writ of habeas corpus is denied and the proceeding is dismissed in its entirety. Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied, as petitioner has not made a substantial showing of a denial of a constitutional right. See, Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. See, 28 U.S.C. § 2253.

SO ORDERED.

SANDRA J. FEUERSTEIN
United States District Judge

Dated: November , 2005
Central Islip, New York

Copies to:

Osman Martinez, 02A2294, *pro se*
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411

Nassau County District Attorney
262 Old Country Road
Mineola, New York 11501